```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8-20-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARTIS SEGUROS MEXICO, S.A. de
C.V., as subrogee of PROLEC GE
INTERNATIONAL, S. de R.L., de C.V.,
       Plaintiff,

     - against -

HLI RAIL & RIGGING, LLC, FRESH
MEADOW MECHANICAL CORP., and KANSAS
CITY SOUTHERN RAILWAY COMPANY,
       Defendants.
------------------------------------------------------------X
HLI RAIL & RIGGING, LLC, FRESH
MEADOW MECHANICAL CORP.,
       Third-Party Plaintiffs,

     - against -

FIREMAN'S FUND INSURANCE COMPANY
and CITY UNDERWRITING AGENCY, INC.,
       Defendants.
------------------------------------------------------------X

11 Civ. 3238 (ALC)(GWG)

ORDER AND OPINION

**ANDREW L. CARTER, JR., United States District Judge:**

     A train derailment has set off a chain reaction of lawsuits and cross-claims. The present motion was brought by Third-Party Defendant, Fireman's Fund Insurance Company ("FFIC") to sever and compel arbitration of the cross-claim brought by Third-Party Defendant City Underwriting Agency ("CUA"). CUA brings a cross motion to stay arbitration should be stayed pending decision of the underlying third-party claim.

     For the reasons set forth below, FFIC's motion to compel arbitration of CUA's cross-claim is GRANTED. Its motion to sever the cross-claim is denied in part and granted in part. CUA's motion to stay arbitration is DENIED.

1

BACKGROUND

I. The Derailment

On March 14, 2010, a train operated by Kansas City Southern Railway ("KCSR") transporting cargo, including two electric transformers, owned by Prolec GE International ("Prolec"), derailed in Texas. The transformers were allegedly damaged beyond repair or use. Prolec and its subrogee, Chartis Seguros, thus commenced a lawsuit against KCSR, HLI Rail & Rigging ("HLI")—the company responsible for the transport—and Fresh Meadow Mechanical Corporation ("Fresh Meadow"), which operates HLI as a wholly-owned subsidiary.[1]

Prior to the derailment, Fresh Meadow had obtained an insurance policy offered by FFIC, through its insurance broker CUA. HLI was a "named insured" on Fresh Meadow's insurance policy.[2] HLI/Fresh alleges that CUA assured them that the insurance would cover the transport. CUA is an agent for FFIC and allegedly gave the assurance without actually receiving the go-ahead from FFIC. After the derailment, FFIC denied HLI/Fresh's claim because its policy excluded coverage for the property of others when the insured is acting as a carrier for hire or arranger of transportation.

II. The Third-Party Complaint

On July 11, 2012, HLI/Fresh filed a third-party complaint against CUA and FFIC, alleging breach of contract, negligent misrepresentation and, as to CUA only, negligence. On

---

[1] FFIC and CUA were both named as defendants in Second Amended Complaint filed August 4, 2011 for the underlying train derailment (Dkt. No. 18), but were voluntary dismissed without prejudice on September 14, 2011 (Dkt. No. 46).

[2] For ease of reference, throughout this Opinion, Third-Party Plaintiffs HLI and Fresh Meadow are referred to simply as "HLI/Fresh."

August 23, 2012, CUA filed its answer in which it also asserted a cross-claim against co-defendant FFIC. The cross-claim states:

> Third-Party defendant CUA, at all times relevant to the procurement of the subject policies of insurance through [FFIC] acted within the scope of their authority as an agent of FFIC.
>
> If it is adjudged that the third-party defendant CUA is liable to third-party plaintiff while acting as an agent for FFIC as alleged in third-party plaintiffs' Third-Party Complaint, which liability is herein denied, and third-party plaintiffs recover judgment against the third-party defendant, then such liability and judgment will have been brought about by reason of the acts, omissions, breach of fiduciary duty and/or breach of contract of third-party defendant FFIC.

CUA Answer, Cross-Claim ¶¶ 51-52 (Dkt. No. 80).

On or about August 31, 2012, FFIC also demanded indemnification from CUA. On September 13, 2012, in its Answer to the Cross-Claim, FFIC denied that it owed indemnification to CUA (Dkt. No. 83, ¶¶ 2-3).

III. CUA as Agent of FFIC

FFIC appointed CUA as an agent for issuance of insurance coverage[3] in New York State by written agreement signed March 10, 2008 ("Agency Agreement"). The Agency Agreement was later modified to amend CUA's commissions on personal insurance policies, effective July 1, 2009 and to terminate CUA's authority as an agent for middle market and personal insurance policies, effective July 1, 2012.

CUA's cross claim alleges that CUA was acting as an agent of FFIC and to the extent it is adjudged liable to HLI/Fresh, it is because of FFIC's acts or omissions. This claim and FFIC's cross-demand implicate the section of the Agency Agreement providing for mutual and

---

[3] The Agency Agreement permitted CUA to act as an agent for: commercial insurance, commercial group insurance, marine insurance, personal insurance and specialty casualty- high excess and umbrella insurance

reciprocal indemnification rights between CUA and FFIC. In relevant part, the Agency Agreement reads:

> [FFIC] will indemnify and hold [CUA] harmless, including paying [CUA's] reasonable defense costs, against liability for damages, fines and penalties, arising out of acts [FFIC] took or failed to take, and for [FFIC's] errors and omissions and for [CUA] acts taken at [FFIC's] specific direction.
>
> [CUA] will indemnify and hold [FFIC] harmless, including paying [FFIC's] reasonable defense costs, against liability for damages, punitive damages (to the extent allowed by law), fines and penalties arising out of acts [CUA] or [its] employees, or independent contractors working within [CUA's] agency or any person or entity the law deems to be [CUA's] subagent took or failed to take, and for errors and omissions, except if [CUA] took or forebore from taking the acts at [FFIC's] specific direction. Acts, errors and omissions include [CUA] and [its subagents'] compliance with laws and regulations.
>
> The party seeking indemnity will promptly notify the other of the claim for which indemnity is being sought. If prompt notice is not given, the indemnity recoverable will be reduced by the amount that the late notice prejudices the defense or increases the loss.
>
> This Section F will survive termination of this agreement.

Agency Agreement, § F.

The Agency Agreement also contains the disputed arbitration clause:

> "If a dispute arises concerning this agreement or any other aspect pertaining to the purpose and implementation of this agreement, or rights, duties, or authority, which [CUA] and [FFIC] cannot resolve, the dispute will be submitted to binding arbitration. Either party may demand arbitration by sending written notice to the other describing the issue(s) to be arbitrated."

Agency Agreement, § I(1).

## DISCUSSION

FFIC moves to compel arbitration of CUA's cross-claim and its own claim for indemnification. CUA does not challenge the validity or the existence of the arbitration clause in the Agency Agreement. Instead, CUA presents the threshold question of whether the FAA

4

applies in this instance, claiming that the "transaction" at issue in this case did not involve interstate commerce.[4]

CUA argues that attention is properly focused on the underlying procurement of insurance between Fresh Meadow and CUA, not the Agency Agreement as the contract evidencing a transaction involving commerce. Specifically, CUA claims that because the procurement of insurance occurred entirely within New York State among New York parties (Fresh Meadow and CUA), there is no interstate commerce. Thus the FAA is inapplicable and the claim must be arbitrated under New York law. CUA also alleges prejudice would occur if the indemnification dispute were severed from the breach of contract dispute brought by HLI/Fresh against CUA and FFIC because the issues in dispute are intertwined.

I.  Standard of Review

The summary judgment standard is appropriate in cases where the district court is required to determine arbitrability. Syncora Guarantee Inc. v. HSBC Mexico, S.A., 861 F. Supp. 2d 252, 258 (S.D.N.Y. 2012) (quoting General Motors Corp. v. Fiat S.p.A, 678 F. Supp. 2d 141, 145 (S.D.N.Y. 2009)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. Speculation, conclusory allegations and mere denials

---

[4] The FAA provides that: A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

are not enough to raise genuine issues of fact. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd., 696 F. Supp. 897, 900 (S.D.N.Y. 1988).

A court deciding a motion to compel arbitration must resolve four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. Kuchinsky v. Curry, No. 09 CIV. 00299 (DLC), 2009 WL 1492225, at *2 (S.D.N.Y. May 28, 2009) (citing JLM Indus., Inc. v. Stolt–Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004)); Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc., 698 F. Supp. 504, 508 (S.D.N.Y. 1988) (citing Genesco Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Here, however, we must preliminarily decide which law governs the issue of arbitrability.

II. Applicability of Federal Arbitration Act

CUA contends that the FAA does not apply because the Agency Agreement between CUA and FFIC is not a contract evidencing a transaction involving commerce. I find that it is.

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040 (2003); Allied–Bruce Terminix Comps. v. Dobson, 513 U.S. 265, 274–78, 115 S.Ct. 834, 840–41, 130 L.Ed.2d 753 (1995) (explaining that §2's "involving commerce" standard reaches to limits of Commerce Clause power). Thus, "[f]ederal law applies to enforcement of a duty to arbitrate, whenever interstate commerce is involved." Guinness–Harp Corp. v. Jos. Schlitz Brewing Co., 613 F.2d 468, 472 (2nd Cir. 1980).

CUA emphasizes that the Supreme Court interprets the FAA's language as "insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection," Allied–Bruce, 513 U.S. at 281. Despite CUA's protestations to the contrary, here, the transaction did "in fact" involve interstate commerce.

Courts have consistently held that contracts between corportations from different states give rise to a finding of interstate commerce. E.g., B.G. Balmer & Co., Inc. v. U.S. Fidelity and Guar. Co., No. CIV.A. 98–734, 1998 WL 764669, at *3 (E.D. Pa. Oct. 30, 1998) ("The Agreement, which establishes an agency relationship between USF & G, a Maryland corporation, and Balmer, a Pennsylvania corporation, clearly implicates interstate commerce and creates significantly more than the "slightest nexus" with interstate commerce that the Arbitration Act requires."); Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997) ("[T]he franchise agreements between DAI, a Florida corporation, and franchisees from various other states 'evidence[ ] a transaction involving commerce.'")[5]; Pennsylvania Data Entry, Inc. v. Nixdorf Computer Corp., 762 F. Supp. 96, 98 (E.D. Pa. 1990) (FAA applies to arbitration clause in contract between Massachusetts and Pennsylvania corporations); Utica Mut. Ins. Co. v. Gulf Ins. Co., 306 A.D.2d 877, 762 N.Y.S.2d 730 (4th Dep't 2003) (an agreement involving reinsurance of a London-based insurance contract that covered a company located in

---

[5] CUA's attempt to distinguish Doctor's Associates (CUA Reply Mem. at 12-13) focuses on issues irrelevant to interstate commerce and the applicability of the FAA. The fact that CUA opposes arbitration does not make it any less mandatory should the court find that a valid agreement to arbitrate exists. See AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418 (1986) (party can only be compelled to arbitrate if the dispute is within the scope of the arbitration clause in the Agreement for "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit").

Curacao and involved claims that could arise anywhere in world was a contract involving interstate commerce, and thus was subject to the FAA); Gerling Global Reinsurance Corp. v. Home Ins. Co., 302 A.D.2d 118, 125, 752 N.Y.S.2d 611, 617 (1st Dep't 2002) (reinsurance agreement among a foreign corporation, a New Hampshire corporation authorized to conduct business in New York, underlying insured located in New Jersey and the coverage sites located in the United States, Canada, Germany and Austria, was subject to FAA). The Agency Agreement was between CUA, a New York corporation, and FFIC, a company that sells insurance in multiple states through agents and is a foreign corporation incorporated and based in California. This is enough to establish interstate commerce.

CUA's argument that the "procurement of an insurance policy by a New York insurance broker/agent for a New York insured issued and delivered in the State of New York by an admitted carrier, did not involve interstate commerce" is flawed. The Court is not concerned for this motion with the procurement agreement between Fresh Meadow and CUA, the agreement between two New York parties. Nor is it dispositive that the Agency Agreement limited CUA's agency to sell on behalf of FFIC to New York, the state of CUA's licensure.

Nevertheless, beyond interstate contract formation, "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control." Alafabco, 539 U.S. at 56-57, 123 S.Ct. at 2040 (internal quotation marks omitted) (alteration in original).

In Alafabco, the Supreme Court held that debt-restructuring agreements were executed in Alabama by Alabama residents were nonetheless contracts evidencing transactions "involving commerce," whose arbitration clauses were subject to the FAA, for three reasons. First, one of

8

the parties to the agreement with the arbitration engaged in business throughout the southeastern United States using loans renegotiated and redocumented in debt-restructuring agreements. Id. at 57. Second, the restructured debt was secured by inventory assembled from out-of-state parts and raw materials. Id. Third, the court recognized the broad impact of commercial lending on the national economy. Id. at 57-58.

Many of the same conclusions can be reached for the insurance industry. Even if CUA were correct that the underlying insurance policy must be considered, insurance is not an entirely intrastate industry. Cf. Slaughter v. Stewart Enterprises, Inc., No. C 07-01157 MHP, 2007 WL 2255221, at *4 (N.D. Cal. Aug. 3, 2007) (distinguishing Alafabco and restructuring agreements from crematory services as "the local nature of the crematory industry. . . suggests that this contract may be one of the few located in the narrow territory beyond the reaches of the Commerce Clause"). To the contrary, although insurance is issued in and regulated by a particular state, an insured party would expect to be covered wherever they go, to the extent provided for in the insurance policy. CUA has not alleged that the contract with HLI/Fresh would only provide insurance protection within the state of New York. Therefore, its attempt to cabin the underlying policy within state lines is not well taken.

The Court has considered CUA's remaining arguments about the lack of interstate commerce and finds them, while fanciful, ultimately fruitless. Because the arbitration clause is contained within the Agency Agreement, "a contract evidencing a transaction involving commerce," the FAA controls this court's interpretation of the scope of the Agency Agreement.

III.   Validity and Scope of Arbitration Agreement

Because "the Federal Arbitration Act carefully limits the role of the courts in considering motions to compel arbitration," Conticommodity Servs. Inc. v. Philipp & Lion, 613 F.2d 1222,

1224 (2d Cir. 1980), "[p]rior to arbitration, a court's role is severely circumscribed; it can only undertake two inquiries: whether or not the company was bound to arbitrate and what issues must it arbitrate." Dry Harbor HRF Inc. v. Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU/AFL–CIO, No. 87 Civ. 3444, 1988 WL 8615, at *3 (E.D.N.Y. Jan. 15, 1988); Jillian Mechanical Corp. v. United Service Workers Union Local 355, 882 F. Supp. 2d 358, 369 (E.D.N.Y. 2012).

CUA does not challenge the existence or validity of the arbitration clause in the Agency Agreement. Therefore, the Court accepts as valid the agreement to arbitrate disputes arising out of the Agency Agreement.

If the court finds the agreement to arbitrate valid, it must then determine whether the dispute falls within the scope of an agreement's arbitration clause and classify the particular clause as either broad or narrow. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001); McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) ("In construing arbitration clauses, courts have at times distinguished between "broad" clauses that purport to refer all disputes arising out of a contract to arbitration and "narrow" clauses that limit arbitration to specific types of disputes.") (internal citations omitted)).

When the arbitration clause is broad enough that it includes disputes "of any nature or character" or "any and all disputes," all questions or disputes arising thereunder are within the exclusive jurisdiction of an arbitrator. Jillian Mechanical Corp., 882 F. Supp. 2d at 368. "[W]here. . . the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 2002); Duane

Street Assocs. v. Local 32B–32J, No. 00 Civ. 3861, 2000 WL 802889, at *2 (S.D.N.Y. June 21, 2000) (presumption of arbitrability for broad arbitration agreements overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

On the other hand, in reviewing a narrow clause, a dispute will only be subject to arbitration if the issue "is on its face within the purview of the clause." Louis Dreyfus Negoce S.A., 252 F.3d at 224. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. See Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir.1991).

The arbitration clause in the Agency Agreement is broad because it requires "a dispute . . . concerning this agreement or any other aspect pertaining to the purpose and implementation of this agreement, or rights, duties, or authority, which [CUA] and [FFIC] cannot resolve." Agency Agreement, § I(1). CUA currently seeks indemnification from FFIC for any liability owing to HLI/Fresh. FFIC similarly seeks indemnification from CUA. Given their diametrically opposed position on indemnification—a right arising from the Agency Agreement—this is a dispute that CUA and FFIC cannot resolve. Thus, by the terms of the arbitration clause, arbitration is appropriate.

IV. Existence of Federal Statutory Claims

There are no federal statutory claims in CUA's cross-claim therefore the Court need not determine whether they are nonarbitrable.

V. Stay of the Arbitration of Cross-Claim is Not Merited

CUA contends in the alternative, that arbitration should be stayed because its cross-claim is inextricably intertwined with HLI/Fresh's allegations of contract breach and negligence.

11

Despite its best efforts, CUA does not distinguish this case from the decisive Supreme Court case and its inescapable conclusion that "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241 (1985). The Second Circuit has recognized the Supreme Court's rejection of the three protestations CUA brings forward: "(1) that a stay should be granted when the nonarbitrable claims permeate or are intertwined with the arbitrable claims; (2) that bifurcation of the arbitrable and nonarbitrable claims creates an intolerable inefficiency, and (3) that permitting the arbitration to proceed would create an unacceptable collateral estoppel problem." NPS Communications, Inc. v. Continental Group, Inc., 760 F.2d 463, 466 (2d Cir. 1985) (adopting holding of Byrd).

First, contrary to CUA's argument, a stay need not be granted because the nonarbitrable claims are not even intertwined with the arbitrable claims. CUA's arguments distinguishing the legal duties of a broker to its insured from those of an agent to its principal (CUA Reply Mem. at 4) establish quite clearly that, rather than being inextricably intertwined, the liability of an agent and a broker are vastly dissimilar. Even so, the either/or dichotomy that CUA seeks to establish is a false one: it is entirely possible for CUA to be a broker and an agent at the same time—the relationship depends on the other party. To HLI/Fresh, CUA is a broker. To FFIC, CUA is an agent. A man is no less someone's son just because he is someone else's brother. Given the complicated nature of business and life, a person or entity may wear two different hats simultaneously.

12

Furthermore, CUA seeks indemnification in its capacity as an agent of FFIC (CUA Answer, Cross-Claim ¶ 51), a right governed entirely by the Agency Agreement. The Agency Agreement requires arbitration. See Agency Agreement, § I(1). The Agency Agreement, while permitting HLI/Fresh and CUA's relationship in that CUA procured insurance for Fresh Meadow ostensibly as an agent of FFIC, does not otherwise concern HLI/Fresh. For all these reasons, CUA cannot establish how its role as broker to HLI/Fresh is inextricably intertwined with its indemnification claim against FFIC.

Next, regardless of any inefficiency that might occur, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute. Byrd, 470 U.S. at 221, 105 S.Ct. at 1242-1243. Instead, the Court recognized, "[b]y its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id. at 218, 105 S. Ct. at 1241 (emphasis in original). Thus, referral of the indemnification dispute to arbitration is not discretionary, but mandated.

Lastly, CUA warns of the danger of conflicting rulings in federal court and in arbitration (CUA Opp. Mot. at 20). It is true that both disputes may be concerned with common questions such as (1) whether HLI/Fresh reasonably believed they had procured insurance to cover the transport; (2) whether CUA improperly informed HLI/Fresh that they were insured; and (3) whether CUA actually communicated the request for insurance to FFIC. Furthermore, unlike many indemnification clauses, where only one party to a contract would be liable for

13

indemnification, here indemnification is a two-way street. Whether to go left or right depends on who acted improperly or failed to act.

But these concerns, while superficially significant, are ultimately unwarranted. What this Court decides as to FFIC's or CUA's liability to HLI/Fresh is a separate determination from the indemnification question between CUA and FFIC. For example, if the arbiter decides that FFIC should indemnify CUA, but this court finds that CUA is liable to HLI/Fresh, CUA can demand indemnification from FFIC. The arbiter's determination does not require a different analysis by this court, and vice versa.

CUA quotes no law to explain why proper scheduling will not avert many of the hypothesized issues of prejudice. To the extent there is some overlap between the outcomes in federal court and arbitration, FFIC and CUA, as defendants to HLI/Fresh's third-party complaint, can keep the court apprised of developments and delays in the arbitration. Simply put, scheduling issues can be maneuvered and should serve as no basis to delay referral to arbitration. Byrd, 470 U.S. at 225, 105 S.Ct. at 1245 (White, J., concurring) ("[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course.").

More fundamentally, CUA does not explain why the determinations made in the arbitration will necessarily bear on the determinations in the federal case or vice versa. The Supreme Court has not "fashioned a federal common-law rule of preclusion, in part on the ground that arbitration cannot provide an adequate substitute for a judicial proceeding." Byrd, 470 U.S. at 223, 105 S.Ct. at 1243 (citing McDonald v. West Branch, 466 U.S. 284, 104 S.Ct.

1799, 80 L.Ed.2d 302 (1984). Thus, "arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings." Id.

Although the arbitrator's determinations are not binding on the court, the Court *may* admit the arbitral decision as evidence and give weight to the arbitrator's findings as appropriate. See In re Litwok, 246 B.R. 1, 6 (E.D.N.Y. 2000) (clarifying that McDonald "addresses the factors to be considered in affording *weight* to an arbitrator's *findings*" and "clearly indicate[s] that 'an arbitral decision may be admitted as evidence'") (citations omitted) (emphasis in original). Thus, the argument for the need to avoid inconsistent rulings is substantially weakened. To the extent the arbitrator reaches findings that are relevant to the nonarbitrable claim, the Court may consider them.

Having determined that arbitration is proper, the procedural details, including how to secure relevant testimony and evidence to resolve the dispute, are within the province of the arbitrator. John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909 11 L.Ed.2d 898 (1964) ("Once it has been determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir. 2010) ("[P]rocedural questions that grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.") (citations and internal quotation marks omitted) (emphasis in original). Thus, CUA's motion to stay arbitration is necessarily denied.

VI. Stay of Federal-Court/Nonarbitrable Claims

Lastly, the Court addresses the FFIC's request to stay the HLI/Fresh third-party claims, or in the alternative, to stay the entire insurance dispute. Admittedly, the court has discretion to

15

stay HLI/Fresh's federal-court claim. Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 859 F. Supp. 669, 677 (S.D.N.Y. 1994) ("[E]ven if the FAA does not entitle a party to a stay [of the nonarbitrable claim] as a matter of law, this court has discretion to grant a stay pursuant to 'the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"); Chang v. Lin, 824 F.2d 219 (2d Cir. 1987). Such discretion "may . . . be appropriate where the pending proceeding is an arbitration in which issues involved in the case may be determined." Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc., 339 F.2d 440, 441 (2d Cir. 1964).

FFIC's request to sever CUA's cross-claim seems coextensive with its motion to compel: if a case presents arbitrable and nonarbitrable issues, of course the Court will retain jurisdiction over the nonarbitrable claims. The conclusions reached above will have the desired effect.

If the request for severance is actually a request to stay HLI/Fresh's third-party claims, the Court concludes that a stay is inappropriate where the claims will stand and fall on their own merits. Article 3 of the FAA requires stay of a pending suit only if the deciding court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3; HG Estate, LLC v. Corporacion Durango S.A. De de C.V., 271 F.Supp.2d 587, 596 n.10 (S.D.N.Y. 2003) (characterizing section 3 as mandating a stay of *arbitrable* claims). At this juncture, there has been no contention that the issues in HLI/Fresh's claims are referable to arbitration or governed by the Agency Agreement. Furthermore, this Court has concluded the issues in HLI/Fresh's third-party complaint are not inextricably intertwined with CUA's cross-claims being handled in arbitration.

16

Alternatively, if FFIC contends that there are nonarbitrable parts of CUA's cross-claim (though the court is not certain what those issues would be), then the nonarbitrable components of the cross-claim would rightly be stayed by this court pending the arbitration pursuant to 9 U.S.C. § 3. Because the Court concludes CUA's cross-claim must be arbitrated in its entirety, this is a moot point.

For many of the reasons stated above, see supra at Part V, the desirability of moving forward with both claims in its normal course counsels against exercise of the Court's discretion to stay the federal court claims. At this early stage, it is unclear whether it will be necessary or even advantageous to stay HLI/Fresh's third-party claims. Thus, the court will deny without prejudice FFIC's alternate suggestion to stay the federal-court claims while the indemnification claim goes forward in arbitration. The parties may renew such a motion at a later date.

## CONCLUSION

For the reasons stated herein, FFIC's motion to compel arbitration and sever the cross-claim (Dkt. No. 88) is granted. To the extent FFIC moves to stay HLI/Fresh's third-party claims, that motion is denied without prejudice. CUA's cross-motion to stay the arbitration (Dkt. No. 104) is denied.

SO ORDERED.

Dated: New York, New York
       August 20, 2013

_____
Andrew L. Carter, Jr.
United States District Judge

17