UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARTIS SEGUROS MEXICO, S.A. de
C.V., as subrogee of PROLEC GE
INTERNATIONAL, S. de R.L., de C.V.,
    Plaintiff,

    - against -

HLI RAIL & RIGGING, LLC, FRESH
MEADOW MECHANICAL CORP., and KANSAS
CITY SOUTHERN RAILWAY COMPANY,
    Defendants.
------------------------------------------------------------X
HLI RAIL & RIGGING, LLC, FRESH
MEADOW MECHANICAL CORP.,
    Third-Party Plaintiffs,

    - against -

FIREMAN'S FUND INSURANCE COMPANY
and CITY UNDERWRITING AGENCY, INC.,
    Defendants.
------------------------------------------------------------X

11 Civ. 3238 (ALC)(GWG)

ORDER AND OPINION

**ANDREW L. CARTER, JR., United States District Judge:**

    Third-Party Defendant Fireman's Fund Insurance Company ("FFIC") moves for summary judgment dismissing the claims of Third-Party Plaintiffs HLI Rail & Rigging ("HLI") and Fresh Meadow Mechanical Corporation ("Fresh Meadow", and together with HLI, "HLI/Fresh Meadow" or "Third-Party Plaintiffs") for breach of contract and negligent misrepresentation for FFIC's refusal to pay an insurance claim. For the reasons below, FFIC's motion for summary judgment (Dkt. No. 168) is granted in part and denied in part.

BACKGROUND

    On March 14, 2010, two electric transformers, owned by Prolec GE International ("Prolec"), were damaged in a train derailment. Prolec and its subrogee, Chartis Seguros, thus

1

commenced a lawsuit against, *inter alia*, HLI Rail & Rigging ("HLI")—which had arranged the transport on Prolec's behalf—and Fresh Meadow, a minority member of HLI. Fresh Meadow also procured a commercial insurance policy underwritten by FFIC, on which HLI was named as an additional insured, that was in effect at the time of the derailment. After the derailment, FFIC denied HLI/Fresh's claim because its policy excluded coverage for the property of others when the insured is acting as a carrier for hire or arranger of transportation. On July 11, 2012, HLI/Fresh filed a third-party complaint (Dkt. No. 68) against City Underwriting Agency ("CUA"), its insurance broker, and FFIC, alleging breach of contract, negligent misrepresentation and, as to CUA only, negligence.

Prior to the derailment, Fresh Meadow had obtained an insurance policy offered by FFIC, through its insurance broker CUA. At all relevant times, CUA was also an authorized agent of FFIC for the issuance of insurance coverage in New York State by written agreement signed March 10, 2008 ("Agency Agreement") (FFIC Memorandum in Support of Summary Judgment ("Mem.") Ex. 12). The Agency Agreement permitted CUA to act as an agent for policies of commercial insurance, commercial group insurance, marine insurance, personal insurance and specialty casualty- high excess, and umbrella insurance, but issuance of some policies had to be referred to FFIC. (Agency Agreement (B)(3) ("You may bind coverage for insurance to the extent allowed in Schedule B1."); id. Schedule B1). The Agency Agreement was later modified to amend CUA's commissions on personal insurance policies, effective July 1, 2009, and to terminate CUA's authority as an agent for middle market and personal insurance policies, effective July 1, 2012. (Id.)

CUA was the producer of the policy at issue, FFIC Policy Number MZ197063734 (the "Policy"), which provided coverage to Fresh Meadow from May 30, 2007 to May 30, 2008.

2

Although HLI was not insured under the original Policy, HLI was added as an "additional insured" on the Policy when it was renewed on May 30, 2008 and was an additional insured at the time of the loss. (Mem. Ex. 3 at FFIC Policy 0117; FFIC Rule 56.1 Statement (Dkt. No. 167) ("Rule 56.1 Stmt") ¶ 8).

According to the FFIC corporate designee, at the time of the 2007, 2008 and 2009 renewals of the Policy, one new Policy was issued every three years with a new policy number and renewal of that policy in the interim would be memorialized with a renewal endorsement. (Rule 56.1 Stmt ¶ 22). When the Policy was issued in 2007, it excluded coverage for the property of others when the insured is working as an arranger of transportation: "'We' do not cover property of others for which 'you' are responsible as . . . an arranger of transportation. This includes carloaders, consolidators, brokers, freight forwarders, or shipping associations." (Mem. Ex. 3 at FFIC Policy 0021 ¶ 14). The parties dispute whether the Policy as renewed in 2009 included coverage for arranging transportation of goods owned by third parties.

Third-Party Plaintiffs contend that they told CUA of HLI's need for transit coverage with a limit of $5 million. Ostensibly in response to this request, beginning September 30, 2009, CUA issued at least nine (9) certificates of insurance to HLI listing coverage for inland marine cargo insurance, which covers the property of others during transport.[1] (Rule 56.1 Stmt ¶¶ 46-47; Harrington Decl. Ex. 9). Contrary to the certificates of insurance, FFIC contends that the Policy was never endorsed to include transit coverage. The Certificates of Insurance also contain the following disclaimer language in the top right-hand corner: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE

---

[1] "Inland marine cargo insurance" is the same as "transit coverage." The terms are used interchangeably throughout this Order.

3

CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." (Harrington Decl. Ex. 9) (capitalization in original).

Oliver Dirks, the CUA employee handling the HLI/Fresh Meadow account, contends that he explained HLI's need for transit coverage to Frantz Beague, an FFIC underwriter. Independent of the documents he was shown at his deposition, Beague does not recall what he learned about Plaintiffs' interest in securing transit coverage and whether he submitted a request for the additional coverage. The emails presented in support of this motion suggest that at one point CUA did communicate Third-Party Plaintiffs' need for transit coverage with a $5 million limit. (Declaration of Robert Wall ("Wall Decl.") Ex. 6-G, April 14, 2009 email from Dirks to Beague). But a later email suggests that CUA may have implicitly withdrawn the request. (Id., April 22, 2009 email from Dirks to Beague ("You and I talked about inland transit receipts for this insured. I was under the impression that the insured transports equipment for others which is not the case; only for themselves; so we are good there.")). In addition to emails, however, Dirks testified that he had phone conversations with Beague about additional changes to the Policy in which Beague said he would include "cargo" insurance for the property of others for no additional premium. (Rule 56.1 Stmt. ¶ 42; Dirks 3/15/13 Dep.[2] 52-56; 57:19-25). Beague testified that he could authorize the issuance of an endorsement to amend an insurance policy, provided it was within his level of authority. (Beague Dep.[3] 80:5-16).

---

[2] The relevant portion of the March 15, 2013 deposition of Oliver Dirks is included in the Harrington Declaration as Ex. 3 and as Mem. Ex. 7.

[3] The relevant portion of the deposition of Frantz Beague is included in the Harrington Declaration as Ex. 4 and as Mem. Ex. 9.

DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd., 696 F. Supp. 897, 900 (S.D.N.Y. 1988). The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact and all inferences and ambiguities are to be resolved in favor of the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002). If "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).

FFIC contends it is entitled to summary judgment for three reasons: first, there is no breach of contract because no coverage existed for the loss that occurred; second, there is no basis for a negligent misrepresentation claim because alleged statements by a FFIC employee constituted only an unactionable statement of future intent for which reliance was unreasonable; third, there is no negligent misrepresentation on a theory of vicarious liability that the acts of the insurance broker who gave assurances that HLI's transports for the property of others were covered are attributable to FFIC.

5

I. Breach of Contract

As a matter of law, to sustain a cause of action for breach of contract, a party must establish: (1) the formation of a contract as to its scope and terms; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage. Sachs v. Zito, 28 Misc.3d 567, 573-574, 901 N.Y.S.2d 818, 824 (N.Y. Sup. Ct. 2010). Furthermore, under New York law, "[i]t is well established that a certificate of insurance, by itself, does not confer insurance coverage, particularly under the circumstances of this case, in which the certificate expressly provides that it 'is issued as a matter of information only and confers no rights upon the certificate holder [and] does not amend, extend or alter the coverage afforded by the policies listed below.'" Sevenson Envtl. Servs, Inc. v. Sirius America Ins. Co., 74 A.D.3d 1751, 1753, 902 N.Y.S.2d 279, 280 (N.Y. App. Div. 4th Dep't. 2010). A certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure. 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 122 (2d Cir. 2011) (quoting Horn Maint. Corp. v. Aetna Cas. & Sur. Co., 225 A.D.2d 443, 444, 639 N.Y.S.2d 355, 356 (1st Dep't. 1996)). Nevertheless, "[o]n summary judgment, a certificate may be sufficient to raise an issue of fact, especially where additional factors exist favoring coverage. . ." Horn, 225A.D.2d at 444, 639 N.Y.S.2d at 356.

Fatal to FFIC's motion is the glaring fact that there are issues of material fact to decide as to the only element at issue here: the scope and terms of the Policy. There is no dispute that CUA issued no less than nine certificates of insurance that HLI was covered for transporting the cargo of others. However, these certificates were apparently inconsistent with the language of the Policy and not reflected in a renewal endorsement. Although these certificates are not

dispositive of HLI's coverage, there is deposition testimony that HLI communicated its request for transit coverage to CUA and that CUA then communicated HLI's insurance needs to FFIC. Furthermore, the Policy was only reissued every three years and the parties dispute whether the Third-Party Plaintiffs received all subsequent endorsements. HLI's request for coverage and receipt of the COIs came long after the original Policy was issued so there are still issues of fact despite the initial exclusion and the fact that Third Party Plaintiffs did not receive a separate endorsement reflecting the new level of coverage. See Am. Bldg. Supply Corp. v. Petrocelli Group, Inc., 19 N.Y.3d 730, 737 (N.Y. 2012) (denying summary judgment to defendant insurance broker as there were issues of fact whether plaintiff requested specific coverage and whether defendant failed to secure a policy as requested, even though plaintiff had received policy after alleged request). These facts make summary judgment for breach of contract inappropriate.

Moreover, an insurer may be equitably estopped from denying coverage where the party for whose benefit the insurance was procured reasonably relied upon the provisions of an insurance certificate to that party's detriment. Lenox Realty Inc. v. Excelsior Ins. Co. 255 A.D.2d 644, 645-646, 679 N.Y.S.2d 749, 750 (N.Y.A.D. 3 Dept.,1998) (citations omitted). For estoppel based upon the issuance of a certificate of insurance to apply, however, the certificate must have been issued by the insurer itself or by an agent of the insurer. Sevenson,74 A.D.3d at 1753, 902 N.Y.S.2d at 281. Here, having received the certificates that it had transit coverage, HLI transported the cargo of others or arranged for that transport as it had done for Prolec GE. This is not a situation where there was no policy at all where reliance on the certificates to its detriment would not be actionable. Cf. Wainwright v. Charlew Const. Co., Inc., 302 A.D.2d 784, 785, 755 N.Y.S.2d 751, 753 (3d Dep't. 2003) (distinguishing Lenox Realty and finding no

reasonable reliance where policy had been canceled due to nonpayment of premium). In addition, the certificate was produced by CUA, which acted as an authorized agent of FFIC, pursuant to the Agency Agreement. Cf. Sevenson, 74 A.D.3d 1751, 1753, 902 N.Y.S.2d 279, 281 (denying plaintiff's estoppel claim where issuing insurance broker was not an authorized agent of insurer). Therefore, while I need not decide the estoppel question,[4] summary judgment on this claim is even more tenuous.

II. Negligent Misrepresentation

FFIC is more successful on its motion for summary judgment on the negligent misrepresentation claim. FFIC contends that Beague's alleged assurances that he would add the transit coverage constitute no more than unactionable statements of future intent. (Rule 56.1 Stmt. ¶¶ 42-43; Mem. at 14-17). Furthermore, it was unreasonable for HLI to rely on such assurances because it is unreasonable to believe they would get $5 million more in coverage for no additional premium. (See id.). HLI construes it as reasonable because the policy already

---

[4] Although Plaintiffs are not seeking a declaration of coverage or moving for summary judgment, it is still an open issue under New York law whether an insurer can be estopped from denying coverage under the circumstances of this case. In 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 112 (2d Cir. 2011), the Second Circuit discussed, without deciding, whether an insurer was estopped from denying coverage where certificate of insurance had been issued but the agreement naming the party as an additional insured had not yet been executed. Further, it certified the following question to the New York Court of Appeals:

> In a case brought against an insurer in which a plaintiff seeks a declaration that it is covered under an insurance policy issued by that insurer, does a certificate of insurance by an agent of the insurer that states that the policy is in force but also bears language that the certificate is not evidence of coverage, is for informational purposes only, or other similar disclaimers, estop the insurer from denying coverage under the policy?

Id. at 115, 124. Although the certification was ultimately withdrawn, see 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., 634 F.3d 232, 233 (2d Cir. 2011) (withdrawing certification); 10 Ellicott Square, 634 F.3d 112, 115 n.1, the question is still a salient one.

8

included that level of coverage for other items and the premiums were already in excess of $5 million. (HLI/Fresh Meadow Counter-Statement ¶ 42).

In order to prevail on a cause of action sounding in negligent misrepresentation, a plaintiff is required to demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." Ramsarup v. Rutgers Cas. Ins. Co., 98 A.D.3d 494, 496, 949 N.Y.S.2d 436, 439 (N.Y. App. Div. 2d Dep't 2012) (quoting J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585 (N.Y. 2007)); Meisel v. Grunberg, 651 F. Supp. 2d 98, 123-24 (S.D.N.Y. 2009) (citing Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000)) ("Under New York law, a claim of negligent misrepresentation requires plaintiff to demonstrate that: (1) defendants had a duty, as a result of a special relationship, to give correct information; (2) defendants made a false representation that they should have known was incorrect; (3) defendants knew plaintiff desired for a serious purpose the information supplied in the representation; (4) plaintiff intended to rely and act upon it; and (5) plaintiff reasonably relied on it to his detriment.").

Third-Party Plaintiffs' claim turns on the second and third elements: they would have to establish that FFIC provided the incorrect information—that the Policy included the coverage when it did not—and then Third-Party Plaintiffs reasonably relied on that misinformation. It is undisputed that no one from Third-Party Plaintiffs ever spoke directly to anyone from FFIC prior to the loss. (Rule 56.1 Stmt ¶¶ 35-36). They did not know about Beague's alleged statements that he would issue the coverage until long after this lawsuit was filed and the discovery was subsequently exchanged. (Rule 56.1 Stmt ¶ 44). CUA, not FFIC, provided the alleged

misinformation that HLI had the requisite coverage. In other words, HLI could not have relied on a direct statement from Beague because they were unaware of the alleged conversation between Dirks and Beague until after the loss. Thus, neither Beague's statement nor any representations from FFIC could form a basis for reasonable reliance. HLI thus cannot establish negligent misrepresentation and summary judgment to FFIC is granted.

## CONCLUSION

For the reasons set forth above, FFIC's motion for summary judgment (Dkt. No. 168) is GRANTED in part and DENIED in part, consistent with this Order.

SO ORDERED.

Dated:   New York, New York
         March 13, 2014

                                           _____
                                           **ANDREW L. CARTER, JR.**
                                           United States District Judge